IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RANDALL ANTHONY GARCIA, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-1178 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Randall Anthony Garcia, a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his murder conviction. Respondent filed a motion for dismissal and/or summary judgment (Docket Entry No. 14), to which petitioner responded. (Docket Entry No. 17.)

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS the motion and DISMISSES this case as shown below.

### *Procedural Background and Claims*

The State's murder charges against petitioner have been thrice tried, twice unsuccessfully. In June of 1989, petitioner was convicted of the 1987 murder of his wife and was sentenced to 40 years in prison. The conviction was reversed on appeal. *Garcia v. State*, 829 S.W.2d 796 (Tex. Crim. App. 1992). He was retried in February of 1997, but the trial court declared a mistrial when the jury was unable to reach a verdict. In the ensuing third trial in September of 1999, petitioner was found guilty and sentenced to eighty years

imprisonment. The conviction was affirmed on direct appeal, and the Texas Court of Criminal Appeals refused discretionary review. *Garcia v. State*, No. 01-00-00073-CR, 2002 WL 1164135 (Tex. App – Houston [1st Dist.] 2002, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals denied petitioner's application for state habeas relief without a written order on the findings of the trial court. *Ex Parte Garcia*, No. 69,034-01, at cover.

Petitioner challenges his 1999 conviction under the following grounds for federal habeas relief:

1.      *Brady* violation;

2.      double jeopardy;

3.      prosecutorial misconduct in soliciting perjured testimony;

4.      denial of right to confront witness;

5.      violations of the Texas Code of Criminal Procedure;

6.      *ex post facto* violation;

7.      insufficient evidence to support the deadly weapon finding;

8.      vindictive sentencing;

9.      violation of Texas Rules of Evidence Rule 404(b); and

10.     ineffective assistance of trial counsel.

Respondent argues that these claims are without merit and should be dismissed.

2

*Factual Background*

In its unpublished opinion affirming the conviction, the Houston court of appeals set

forth the following statement of facts:

> Appellant and his wife, complainant, were married in 1983, and had a child in
> 1984.  The couple separated in 1987.  While the divorce was pending,
> complainant was awarded temporary custody of the child.  Appellant was
> dissatisfied with the arrangement, and, in September 1987, during a period of
> visitation, he took the child to Miami.  Complainant reported appellant to
> police, who arrested appellant at a Miami airport.  Appellant returned to
> Houston, where he was charged with interference with child custody.  The
> divorce court terminated appellant's rights to visitation.  On October 8, 1987,
> appellant was formally arraigned for interfering with child custody.  The next
> morning, police found complainant dead in her apartment; she had been
> beaten, strangled, and stabbed.
>
> *     *     *     *
>
> A jury found appellant guilty of murder, and Judge Woody Densen assessed
> punishment at 80 years confinement.

*Garcia*, at *1.  At the close of the punishment hearing, the trial court made an affirmative

finding that a deadly weapon was used in the commission of the offense.  S.F., Vol. 10, p.

152.

*The Applicable Legal Standards*

This petition is governed by the applicable provisions of the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. §2254.  Under the AEDPA,

federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court

unless the state adjudication of the claim was contrary to clearly established federal law as

3

determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonable extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceedings. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the

4

presumption of correctness by clear and convincing evidence. *Miller-El*, 537 U.S. at 330-31; 28 U.S.C. § 2254(e)(1).

*Brady Violation*

Petitioner asserts that the State violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by failing to disclose as favorable evidence the fact that crime scene items sent to local officials for DNA testing were never tested.

Under *Brady*, the State's suppression of evidence favorable to the accused and material to either guilt or punishment violates a defendant's due process rights under the federal constitution. *Brady* obligates the prosecution to turn over to the defense both exculpatory and impeachment evidence, whether or not it was requested by the defense. *United States v. Bagley*, 473 U.S. 667, 682, 685 (1985). Such evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. A reasonable probability of a different result is shown when the suppression of evidence undermines confidence in the verdict. *Bagley*, 473 U.S. at 678; *Gibbs v. Johnson*, 154 F.3d 253, 256 (5th Cir. 1998). A *Brady* violation is established by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Graves v. Dretke*, 442 F.3d 334, 340 (5th Cir. 2006). The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of trial, does not establish materiality under this standard. *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). *Brady* applies

5

equally to evidence relevant to the credibility of a key witness in the State's case against a defendant. *Giglio v. United States*, 405 U.S. 150 (1972). Evidence is not "suppressed," however, if the defendant knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory information. *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994).

In rejecting petitioner's *Brady* claim, the state trial court made the following relevant findings:

3. No DNA testing or comparisons have been conducted upon any evidence related to [petitioner's case] submitted to the Harris County Medical Examiner's Office[.]

\*   \*   \*   \*

10. Although physical evidence was delivered to the Harris County Medical Examiner's Office for the purpose of conducting DNA analysis, no DNA tests were performed on such evidence[.]

11. Applicant fails to show that the State. . . committed a *Brady* violation[.]

*Ex parte Garcia*, Supplemental Record, pp. 126-27. The Texas Court of Criminal Appeals relied on these findings in denying habeas relief. *Id.*, at cover.

Petitioner argues that, if armed with the undisclosed fact that DNA testing was requested but not done, he "would have questioned [the State's witness] why were resources wasted dropping off evidence if testing wasn't expected, hereby satisfying the favorability aspect." (Docket Entry No. 17, p. 3.) This purported "wasting of resources" was not material to petitioner's case; had such information been disclosed, it is unlikely that the result

6

of the proceeding would have been different.  The record shows that items of evidence regarding the criminal offense were submitted to the FBI laboratory for analysis, and that the jury was made aware that the FBI's testing results did not connect petitioner to the items. S.F., Vol. 6, pp. 58, 93, 122-23, 126-28.  Moreover, petitioner has not shown that his trial counsel was unaware that the DNA testing had not been performed.

The state court's determinations rejecting petitioner's *Brady* claim are not in conflict with established federal law and are not objectively unreasonable, and petitioner fails to rebut the presumption of factual correctness with clear and convincing evidence.  Petitioner is not entitled to habeas relief under this issue.

### Double Jeopardy

During petitioner's original trial, photographs of a bruise on his abdomen were admitted into evidence to suggest that complainant had struck him during the offense, thus rebutting his defense of misidentification.[1]  On appeal, the court of appeals held that police officers were without probable cause to make a warrantless arrest of petitioner, such that the photographs of petitioner's abdomen taken shortly after the arrest were inadmissable.  *Garcia v. State*, No. 08-89-00242-CR (Tex. App. – El Paso 1993) (opinion on remand).  The appellate court noted that the bruise on petitioner's abdomen was the only evidence directly linking him to his wife's murder.

_____

[1]The State had argued that the outline of the bruise was similar in shape to the heel of his wife's shoe found at the scene of the murder.  *See Garcia*, at *2.

7

In the instant trial, the State offered photographs of petitioner's face taken the day of his arrest.  Although petitioner admits that these photographs were not the same as those held inadmissible in the first trial, he argues that they were inadmissable because they were taken at the same time as the inadmissible photographs.  In rejecting petitioner's argument and affirming the conviction, the court of appeals held that:

> Appellant objected, arguing these pictures were the fruits of an illegal arrest. The State agreed the pictures were taken following the warrantless arrest of appellant, but argued the pictures could be used to rebut a false impression. The trial court overruled appellant's objections and admitted the pictures.
>
> On appeal, the State contends the pictures were necessary to establish appellant's identity and to show 'how appellant looked on the day of the crime, and to dispel any suggestions by the defense that appellant did not match [a witness's] description[.]'
>
> A defendant's face is not a suppressible fruit of an illegal arrest.  *U.S. v. Crews*, 445 U.S. 463, 478 (1980)[.]  Therefore, the trial court did not err in admitting appellant's pictures.

*Garcia v. State*, No. 01-00-00073-CR, 2002 WL 1164135 (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd) (citations omitted).

Petitioner contends in the instant case that, "[t]he issue here is not whether Petitioner's face is suppressible, but that the conviction was obtained by the use of evidence previously held to be inadmissible and thus in violation of protections against double jeopardy, which embodies collateral estoppel."  (Docket Entry No. 3, pp. 13-14.)  In short, petitioner argues that the earlier appeal had held inadmissible *all* of his post-arrest photographs for *all* purposes as a matter of collateral estoppel.  Because there are no constitutional protections

regarding the doctrine of collateral estoppel, petitioner has couched his habeas ground in terms of a double jeopardy claim.

The doctrine of collateral estoppel and the federal constitutional protection against double jeopardy converge into play "when an issue of ultimate fact has once been determined by a valid and final judgment of acquittal[;] it cannot again be litigated in a second trial for a separate offense." *Yeager v. U.S.*, __U.S.__, 129 S. Ct. 2360, 2368 (2009).[2]  As petitioner has never been acquitted of the murder charges, the hybrid issue of double jeopardy based on collateral estoppel is not germane to the instant case under *Yeager*.  Further, collateral estoppel bars successive litigation of an issue of fact or law that is actually litigated and determined by a valid and final judgment, and is essential to the judgment.  *Bobby v. Bies*, __U.S.__, 129 S. Ct. 2145, 2152 (2009).  If a judgment does not depend on a given determination, re-litigation of that determination is not precluded.  *Id.*  In addition, even where the core requirements of issue preclusion are met, an exception to the general rule may apply when a change in the applicable legal context intervenes.  *Id.*

It is clear in the instant case that the validity of petitioner's warrantless arrest has been litigated and found wanting; the State was precluded from re-litigating the issue of probable cause regarding the warrantless arrest.  Further, the issue of admissibility of photographs of petitioner's abdomen was soundly resolved.  The El Paso court of appeals did not, however,

---

[2]The Supreme Court noted that the more descriptive term "issue preclusion" is often used in lieu of "collateral estoppel" in current jurisprudence.  *Yeager*, 129 S. Ct. 2367 n.4.

9

address the issue of whether the photographs of petitioner's face were inadmissible, as that issue was not before it.   The Houston court of appeals, which did address the issue, determined that, notwithstanding the illegal warrantless arrest, the photographs of petitioner's face were admissible.   The issue of admissibility of the facial photographs was not determined by the El Paso appellate court; accordingly, collateral estoppel did not prevent subsequent consideration of the issue.   No double jeopardy violation is shown.   *Yeager*; *Bies*.

Petitioner also argues that admission of the photographs violated Article 38.23(a) of the Texas Code of Criminal Procedure, which provides that, "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."   Violation of state evidentiary or procedural laws does not, standing alone, give rise to a federal constitutional issue.  Federal habeas corpus is available for vindication only of rights existing under federal law, *Martinez v. Johnson*, 255 F.3d 229, 246 (5th Cir. 2001), not of rights existing solely under state procedural rules.  *Manning v. Warden, Louisiana State Penitentiary*, 786 F.2d 710, 711 (5th Cir. 1986).  Petitioner's claim independently based on violation of the Texas Code of Criminal Procedure fails to raise a cognizable federal habeas claim, and respondent is entitled to summary judgment dismissal of this issue.

Petitioner fails to show that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§ 2254(d)(1), (2).  No grounds for habeas relief are shown.

*Violation of Rule 404(b)*, Texas Rules of Evidence

Petitioner complains that his rights to due process were violated because he did not receive notice under Texas Rules of Evidence Rule 404(b) of the State's intent to introduce extraneous offense evidence.  In rejecting this issue on direct appeal, the state court of appeals held as follows:

> In point of error one, appellant asserts the trial court erred in admitting evidence of his extraneous offenses because the State did not give him notice as required by rule 404(b) of the Texas Rules of Evidence.  Rule 404(b) states:
>
> > (b) Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.
>
> Prior to the second trial, on August 16, 1994, appellant's attorney [] filed a 'request for notice of [S]tate's intention to introduce evidence of other crimes, wrongs or acts (adjudicated or unadjudicated[) ] in punishment pursuant to article 37.07 C.C.P.'  In response, the State filed, on September 1, 1994, a notice of intent to use the following extraneous offenses:  interference with child custody; harassment; stalking; domestic violence; and terroristic threat.
>
> Prior to the third trial, on June 24, 1999, appellant's current attorney [] filed a notice of request for 37.07, 38.37(b), 404(b), and 609(f) evidence.  In response, the State filed, on June 25, 1999, a notice of intent to use evidence

of other crimes, wrongs, or acts.  The notice alleged that appellant, 'while incarcerated in the Texas Department of Corrections, violated prison rules by possessing contraband, namely, cold medicine.'

At the third trial, the State offered, during its case-in-chief, evidence that appellant had, in the past, interfered with child custody, stalked complainant, and assaulted complainant with a gun.  Appellant objected that he had not been given notice of the State's intent to introduce such evidence, as required by rule 404(b).  He argued:  'The only thing we got notice pursuant to our written request for notice was this cough syrup remedy.'  The State agreed, but added: '[T]here are prior notices on file that were made by the prosecutors before on the two trials.'  Appellant did not contest that notice had been given to prior counsel.  He was 'satisfied that [the prior notices were] in the Court's file,' but argued new notice was required.  The trial court found the State had complied with the notice requirement in rule 404(b) and admitted the evidence.

The purpose of rule 404(b) is to remove the element of surprise.  The record shows [counsel] was not surprised by the State's introduction of extraneous offense evidence.  It was clear [counsel] was familiar with the trial court's file and the records from the prior trials.  Given such knowledge, [counsel] was provided sufficient notice to prepare a defense to counter such evidence.  He demonstrated his preparation by cross-examining the State's witnesses about the extraneous offenses.  [Counsel's] filing of a motion in limine is further evidence he had actual knowledge of the extraneous offenses and the State's intent to use them.  Under these facts, we cannot conclude the trial court erred in admitting the evidence of appellant's extraneous offenses.

Appellant relies on [state case law] for the proposition that the mere opening of the State's file does not satisfy the requirement that the State give notice of intent to introduce, in its case-in-chief, evidence of appellant's extraneous offenses.  Unlike [those cases], this case involves the trial court's file, and, therefore, appellant's reliance on these cases is misplaced.

*Garcia*, at *1-2 (citations omitted).  The appellate court overruled petitioner's Rule 404(b)

argument and affirmed the conviction.

12

To the extent petitioner claims that the State failed to give him notice pursuant to Rule 404(b), his complaint fails to raise an issue of federal constitutional dimension. The violation of the notice provision is based solely in state law, and encompasses no federal constitutional right. Further, the state court of appeals held that petitioner's right to notice under Rule 404(b) was not violated; this Court may not revisit that determination as it arises under, and is based in, state law. The Supreme Court has long held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). To any extent petitioner claims a federal due process violation based on the State's violation of Rule 404(b), his argument is foreclosed by the state appellate court's finding that the rule was not violated. *See Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

Petitioner fails to show that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §§ 2254(d)(1), (2). Petitioner is not entitled to habeas relief.

## *Prosecutorial Misconduct*

Under this ground, petitioner complains that the prosecution knowingly used perjured testimony by allowing a police officer to change the testimony of an unavailable witness.

Debra Hill, who resided next door to petitioner's wife at the time of the offense, testified at petitioner's first trial in 1989 that she was unable to make a tentative or positive

identification of petitioner in a photo line-up as the person she had seen entering the victim's apartment.  Because Hill had moved and could not be located for the instant trial ten years later, the trial court allowed her prior testimony to be read to the jury.  The record shows that the jury heard Hill's 1989 testimony that she was unable to make a tentative or a positive identification of the person she saw going up the stairs from a series of photographs.  S.F., Vol. 6, p. 37.  Detective David Worley, presented live at the 1999 trial, testified that Hill had made a tentative identification of petitioner from the photo spread, but that she was unable to commit to being absolutely sure that it was him.  *Id.*, Vol. 8, pp. 76-77.  He further testified that she made a tentative, but not positive, identification of petitioner in a subsequent live line-up.  *Id.*, p. 81.  During his cross-examination of Detective Worley, defense counsel emphasized Hill's testimony that she had been unable to make a positive *or* a tentative identification of petitioner.  *Id.*, pp. 85, 87.  Worley testified he was "aware that's what she said" and that Hill was not "being investigated or prosecuted for perjury, obstruction of justice [or] anything."  *Id.*, p. 87.

Under re-direct examination, Worley agreed that Hill never expressed "a hundred percent certainty" of her identification of petitioner:

> She expressed tentatively, if I could define tentatively.  A tentative ID is a person looked similar to that person.  He appears in physical stature to be the same person.  He had the same physical features and just similar in it's – it's tentative.  When we do these IDs we have a positive, tentative and a non-ID. Ms. Hill would not commit to it not being him, she wouldn't commit to it being him, she just said it was similar to the person she saw and we agreed that

that would be a tentative.  Ms. Hill would never say she identified anybody.
She just said that it was similar to the person.

*Id.*, p. 90.  The trial court rejected petitioner's claims that Worley's testimony regarding

Hill's tentative identification was perjury, and made the following relevant findings:

9.     The State did not present any perjured testimony from Detective David
       Worley or Willis Corbin, but instead, properly presented evidence about
       Debra Hill's prior inconsistent, out-of-court, tentative identifications of
       Applicant to rebut Hill's prior trial testimony[.]

                                   *    *    *    *

11.    Applicant fails to show that the State presented perjured testimony[.]

*Ex parte Garcia*, p. 127.

       Constitutional due process forbids the State knowingly to use, or fail to correct,

perjured testimony.  *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Hafdahl v. Johnson*,

251 F.3d 528, 532-33 (5th Cir. 2001).  To prove that the State denied him due process of law

by relying on perjured testimony, petitioner must prove that (1) a witness testified falsely; (2)

the State knew the testimony was false; and (3) the testimony was material.  *See Knox v.

Johnson*, 224 F.3d 470, 477 (5th Cir. 2000).

       Petitioner has not met this burden, as his perjury claim is grounded in inconsistencies

or contradictions between the testimony of Worley and Hill as to whether or not Hill

"tentatively" identified petitioner.  *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)

(holding that contradictory testimony among witnesses or inconsistencies within a witness's

trial testimony are to be resolved by the trier of fact and do not suffice to establish that

15

certain testimony was perjury).  The jury heard both Hill's testimony that she neither positively nor tentatively identified petitioner and Worley's testimony that, according to his definition of "a tentative ID," Hill tentatively identified petitioner.

Petitioner fails to show that the state courts' decisions rejecting his perjury claim were contrary to, or an unreasonable application of, clearly established federal law, or that they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. §§ 2254(d)(1), (2).  No habeas relief is merited.

*Confrontation of Witness*

As previously noted, the trial court allowed the State to read to the jury the 1989 trial testimony of witness Debra Hill, as the State was unable to locate her for the third trial in 1999.  Petitioner claims that this violated his confrontation rights, as the State failed to show that Hill was unavailable for trial.

In rejecting this argument on direct appeal, the Houston court of appeals found as follows:

> In points of error two, three, and four, appellant asserts the trial court violated his Sixth Amendment right to confrontation of witnesses when it admitted the former testimony of Debra Hill, complainant's neighbor.  He complains Hill's former testimony was not admissible as a hearsay exception because the State did not use due diligence to find her.
>
> Former testimony is 'testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.' TEX. R. EVID. 804(b)(1). Former testimony is admissible as a hearsay exception if the declarant is unavailable

16

as a witness.  *Id.*  A declarant is unavailable if she is absent from the hearing, and the proponent of the declarant's statement has been unable to procure her attendance or testimony by process or other reasonable means.  *Id*. at 804(a)(5).

Hill's testimony from the first trial shows she lived with her two children in the '[n]ext apartment over.'  The two apartments, which were 'exactly the same except they're opposite,' shared a common stairwell.  Facing the stairwell are windows.  On October 9, 1987, between 7:00 a.m. and 7:15 a.m., Hill heard loud noises next door.  There was 'bumping, like somebody being slammed against the wall.'  A woman was making noises 'like it hurt to be banged around.'  Hill reported the noises to the manager.  A couple of minutes later, Hill looked outside the window.  At first, Hill saw nothing; she only heard someone approaching the stairwell.  Then, she saw a man fitting appellant's description coming up the stairs.  Hill testified: 'He was male, under 30, squarely built, pretty solidly built, olive complexion.  He was probably Hispanic, possibly.  He wasn't white[.]  He had clothes on[:] jeans, faded blue jeans, short-sleeved shirt, hat, [and] glasses.'  The man 'hurried up the stairs, went in next door and shut the door and that stopped the noise from being so loud.'  Four or five minutes passed before the noises stopped.

More than 10 years had passed since the first trial, and Hill had moved to another state.  The State wanted to present, by transcript, Hill's testimony from the first trial.  Appellant objected, arguing the State had not used due diligence to find Hill.  The trial court found Hill was unavailable and admitted Hill's testimony by transcript.

To introduce the former testimony of an unavailable witness, the proponent of the testimony must have made a good faith effort to obtain the witness's presence at trial.  *Barber v. Page*, 390 U.S. 719, 724-25 (1968).  The rules, however, do not require a proponent to perform every improbable effort that, in hindsight, might have produced the witness.  'Rule 804(a)(5) does not require a proponent to butt his head against a wall just to see how much it hurts.'

The State's investigator, Bruce Frank, testified that he tried to find Hill to testify in appellant's second and third trials.  Frank checked driver's license records to find a current address.  He found that Hill, who had changed her name to Givens, at one point had an address in Oklahoma City, Oklahoma.

Frank searched telephone records, but he was unable to find a phone number for her.  The State had an out-of-state subpoena issued for the Oklahoma address in June 1999.  Hill was not present at the September 1999 trial.

On cross-examination, Frank admitted he had not: (1) contacted any utility companies to find a current address; (2) visited Hill's last known address; (3) spoken to Hill's relatives; (4) traced any car Hill might have registered in Oklahoma; or (5) spoken with her last known employer.

Appellant relies on [state appellate court cases].  However, unlike [in those cases], the State in this case used means other than the mere issuing of a subpoena to find Hill.  Frank checked driver's license records and found that Hill had a new name and address.  The State then issued a subpoena for Hill at the new address.  Frank also checked telephone records, but was unsuccessful.  More than ten years had passed since Hill had testified at the first trial.  The trial court could have concluded from the evidence that the State exercised due diligence by pursuing other reasonable means to find Hill.  Under such evidence, we cannot conclude the trial court abused its discretion in holding Hill was unavailable.

*Garcia*, at *3-4 (citations omitted).  Findings of fact made by the trial court on collateral review echoed these determinations.  *Ex parte Garcia*, pp. 127-28.

The Confrontation Clause of the Sixth Amendment provides that, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  For this purpose, a witness is not "unavailable" unless the State made a good-faith effort to obtain the witness's presence at trial.  *Id.*; *Barber v. Page*, 390 U.S. 719, 724-25 (1968).  Because of the importance federal constitutional tradition attaches to

a defendant's right to confrontation, the good faith effort requirement demands much more than a merely perfunctory effort by the government, but "[t]he inevitable question of precisely how much effort is required on the part of the government to reach the level of a 'good faith' and 'reasonable' effort eludes absolute resolution applicable to all cases." *U.S. v. Tirado-Tirado*, 563 F.3d 117, 123 (5th Cir. 2009). The lengths to which the prosecution must go to produce a witness to establish his or her unavailability is a question of reasonableness; the prosecution need not make efforts that would be futile. *United States v. Aguilar-Tamayo*, 300 F.3d 562, 565 (5th Cir. 2002). The prosecution bears the burden of establishing that a witness is unavailable. *Ohio v. Roberts*, 448 U.S. 56, 74 (1980).

Petitioner argues here that, because the State took insufficient steps to locate witness Debra Hill, the trial court violated his confrontation rights in allowing into evidence her prior trial testimony. Both the record and the state appellate court's findings reveal that measures taken by the State in this case to locate Debra Hill for the third trial met the requirement of "good faith" or "reasonable" efforts required by the Sixth Amendment. Nearly ten years passed between the first trial and the instant trial. The State's investigator testified that he tried to find Hill to testify in the second and third trials. He checked driver's license records to find a current address. He found that Hill, who had changed her name to Givens, at one point had an address in Oklahoma City, Oklahoma. Frank searched telephone records, but he was unable to find a phone number for her. The State had an out-of-state subpoena issued for the Oklahoma address in June 1999, but Hill did not appear at the September 1999 trial.

19

Petitioner does not clearly articulate what additional steps the State should have taken or show why such additional steps were necessary under the circumstances.  Rather, he refers to the investigator's own testimony that he did not visit Debra Hill's last known address, speak to any of her family members, contact a utility company in Oklahoma, run vehicle information, or contact her past or present employers.  (Docket Entry No. 17, p. 10.) Petitioner's references to the investigator's testimony of steps not taken does not negate the reasonable steps that were undertaken or that constituted good faith efforts to locate Debra Hill.

Petitioner further asserts that he was denied due process by the trial court's failure to follow articles 29.04 and 24.28 of the Texas Code of Criminal Procedure.  Article 29.04 provides that:

> It shall be sufficient, upon the first motion by the State for a continuance, if the same be for the want of a witness, to state:
>
> 1.  The name of the witness and his residence, if known, or that his residence is unknown;
>
> 2.  The diligence which has been used to procure his attendance; and it shall not be considered sufficient diligence to have caused to be issued, or to have applied for, a subpoena, in cases where the law authorized an attachment to issue; and
>
> 3.  That the testimony of the witness is believed by the applicant to be material for the State.

Article 24.28 provides for procedures and a hearing regarding the attendance of an out-of-state witness in a Texas state criminal proceeding.

Federal habeas corpus is available for vindication only of rights existing under federal law, *Martinez v. Johnson*, 255 F.3d 229, 246 (5th Cir. 2001), not of rights existing solely under state procedural rules. *Manning v. Warden, Louisiana State Penitentiary*, 786 F.2d 710, 711 (5th Cir. 1986). A violation of a state procedural rule does not, in itself, constitute a ground for federal habeas relief. Petitioner's claims independently based on violations of these state procedural provisions fail to raise cognizable federal habeas claims, and respondent is entitled to summary judgment dismissal of these issues.

Petitioner fails to show that the state court's decision rejecting his federal confrontation clause claim was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §§ 2254(d)(1), (2). Habeas relief is unwarranted.

### *Ex Post Facto Violation and Deadly Weapon Finding*

Petitioner presents these issues separately; however, they will be addressed as one for clarity and efficiency.

The trial court entered an affirmative finding that a deadly weapon was used in the commission of the offense; no finding was made that *petitioner* used or exhibited the deadly weapon. S.F. Vol. 10, p. 152. Petitioner argues that the finding must be deleted for two

21

related reasons:  first, pre-1991 state law required the trial court to find that *petitioner* personally used or exhibited the deadly weapon, such that the non-specific affirmative finding constituted an *ex post facto* violation; and second, the required specific finding is precluded by lack of any evidence placing the deadly weapon directly in petitioner's hands during the offense.  (Docket Entry No. 17, pp. 15-16.)

In rejecting petitioner's arguments on direct appeal, the state appellate court held that:

> Relying on *Travelstead v. State*, 693 S.W.2d 400, 402 (Tex. Crim. App. 1985), appellant complains the trial court erred in entering an affirmative finding that he used a deadly weapon because (1) the State tried him as a party to the offense, and (2) there was no evidence he used or exhibited a deadly weapon. *Travelstead* states that, if the guilt of the defendant is as a party, there must be a specific finding by the trier of fact that the defendant personally used or exhibited a weapon. *Id.* at 402.  Unlike *Travelstead*, appellant, in this case, was not tried only as a party. The jury was charged on whether appellant himself committed the offense *and* whether appellant was a party to the offense.  The trial court did not err in entering [the] affirmative finding[.]

*Garcia*, at *10 (reformatted, original emphasis).

*Travelstead* was effectively overruled in 1991 when the Texas Code of Criminal Procedure was amended to permit the entry of an affirmative finding based on a determination that a party to the offense knew that a deadly weapon would be used or exhibited during the commission of the offense.  *See Lafleur v. State*, 106 S.W.3d 91, 96, n.33 (Tex. Crim. App. 2003).  Petitioner argues that, because the offense was committed in 1987, the trial court's failure to follow *Travelstead* constituted an *ex post facto* violation.

Because the Houston appellate court issued the last reasoned opinion on the matter, the intermediate appellate decision should be reviewed to determine whether the denial of petitioner's claim was contrary to, or an unreasonable application of, federal law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The state court rejected petitioner's argument on state law grounds. As noted by the Houston appellate court, the jury was charged on whether petitioner himself committed the offense and whether he was a party to the offense. The jury was allowed to find petitioner guilty of murder as either a principal or a party in reaching its general verdict. Clerk's Record, Vol. IA, at 349-51. Because the jury was charged on both whether petitioner committed the offense as a principal *and* as a party to the offense, and because a general verdict of guilty was made, *Travelstead* did not apply to petitioner's case. It is not this Court's function to reconsider issues of state law, and this Court is bound by the Houston appellate court's finding that the trial court's deadly weapon finding was not improper under state law. Because the trial court was not required to limit its deadly weapon finding solely to petitioner as a principal, any lack of evidence as to his personal use of a deadly weapon in commission of the offense is irrelevant.

Although review of petitioner's *ex post facto* claim, on the other hand, is squarely within this Court's province, his claim requires the trial court to have applied post-1991 law in making the deadly weapon finding. The Houston court of appeals found the deadly weapon finding proper under state law and rejected petitioner's argument that the finding

23

violated *Travelstead*.  Because petitioner did not establish that the trial court retroactively

applied post-1991 law in making the deadly weapon finding, his *ex post facto* claim fails.

Petitioner fails to show that the state court's decision was contrary to, or an

unreasonable application of, clearly established federal law, or that it was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding.  28 U.S.C. §§ 2254(d)(1), (2).  Petitioner is not entitled to habeas relief.

*Vindictive Sentencing*

Petitioner complains that his due process protections were violated by the state judge's

use of a vindictive sentence.  In support, he asserts that the he received a forty-year sentence

in the first trial, but an eighty-year sentence in the instant trial.  In rejecting this argument,

the state court of appeals held as follows:

> In June 1989, Judge Burnett assessed punishment at confinement for 40 years.
> Appellant successfully appealed his conviction.  More than ten years later, in
> September 1999, Judge Densen assessed punishment at confinement for 80
> years.  Appellant contends Judge Densen acted vindictively in imposing a
> harsher sentence on retrial following a successful appeal, in violation of
> federal and state constitutional rights to due process.
>
> Due process of law requires that vindictiveness against a defendant for having
> successfully attacked his first conviction must play no part in the sentence he
> receives after a new trial.  If a judge increases a defendant's sentence after a
> new trial, the reasons for the increase must affirmatively appear on the record.
> The reasons must be based on objective information concerning identifiable
> conduct on the part of the defendant occurring after the time of the original
> sentencing proceeding.  Absent reasons affirmatively appearing on the record,
> a presumption of vindictiveness arises.  The State has the burden of rebutting
> the presumption by affirmative proof.

24

When, as in this case, a defendant is sentenced by a different judge, the [case authority] presumption does not apply.   Where the [case authority] presumption does not apply, a defendant may still obtain relief if he can show actual vindictiveness.

Judge Densen indicated that he had not read the record from the first trial, and defense counsel doubted if Judge Densen had 'done so since.'  Under such evidence, we cannot conclude Judge Densen was familiar with the former trial or had a 'personal stake in the prior conviction.'  To presume Judge Densen acted vindictively would call for speculation.

Judge Densen stated, for the record, various non-vindictive reasons for increasing appellant's sentence.  First, he made the following observations:

> The Court did hear testimony from Mr. Jacobson, which is new testimony, the assault extraneous offense against the victim-plaintiff in her apartment.

> Furthermore, the Court has Exhibit 73, which is a part of the pen packet which makes a finding of misconduct on the part of the Defendant while serving time in prison and a disciplinary report and, I assume, punishment.

> So, for the record, the Court has heard some additional testimony it hadn't heard in the first trial[.]

Judge Densen then held:

> [T]he Court finds that there was additional evidence of extraneous offenses offered in this trial that were not tried or offered in the 1989 trial, specifically, without going into them, Groves, the father and son investigators, the stalking incidents, the assault against Mr. Jacobson and the deceased victim-Complainant, also – and I agree that it's a minor thing – the punishment that he received in prison.  But these are additional facts that were introduced into this trial that were not in the other trials.

As far as vindictiveness, the Court finds that this trier of facts, as far as punishment, is a different trier of facts; and there's no vindictiveness.

25

Appellant points to the presentence investigation report (PSI) from the first trial as evidence Judge Densen did not rely on new or additional evidence. He contends the PSI 'outline[s] the exact same conduct which [Judge Densen] in the instant case purportedly relied upon in increasing appellant's sentence from 40 to 80 years incarceration.' The State asserts, and we agree, the PSI 'does not provide the detail afforded by the trial testimony.'

Appellant complains 'there was insufficient information concerning appellant's subsequent conduct to justify a 40-year increase' in punishment. He was punished, in prison, for having cough medicine, which was considered contraband. Such conduct, appellant contends, 'does not rise to the level of subsequent conduct which would give any court sufficient reason to double appellant's punishment upon retrial.' Judge Densen was entitled to consider events subsequent to the first trial that could have shed new light upon appellant's 'life, health, habits, conduct, and mental and moral propensities.' Therefore, Judge Densen properly considered appellant's prison record.

We conclude Judge Densen stated, on the record, sufficient, objective, and non-vindictive reasons that justify his decision to increase appellant's sentence. Judge Densen, in determining appellant's sentence, had wide discretion. Because Judge Densen provided on-the-record, non-vindictive reasons for increasing appellant's sentence, there was no abuse of discretion.

In a footnote, appellant complains about his 'motion for court to predetermine punishment.' He alleged the evidence was insufficient to justify an increase in punishment and asked the court to 'determine the range of punishment. . . and . . . determine that the range of punishment cannot exceed the sentence previously imposed upon the defendant for the same offense.' Appellant contends that, by not hearing this motion prior to trial, Judge Densen violated his rights to make an informed decision about punishment election and to have effective representation. This, appellant argues, is evidence of the Judge Densen's vindictiveness. For the reasons provided above, appellant's complaint is without merit.

Appellant has not shown Judge Densen acted vindictively in assessing punishment, and, therefore, his rights to due process were not violated.

*Garcia*, at *7-9 (citations omitted).

The Supreme Court recognizes that, when a second judge imposes a lengthier sentence than did an earlier judge, "it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentence] imposed a lenient penalty."  *Texas v. McCullough*, 475 U.S. 134, 140 (1986).  Thus, petitioner was accorded no presumption of vindictiveness, and he was obligated to establish actual vindictiveness on the part of the state trial judge.  *See United States v. Reinhart*, 442 F.3d 857, 860-61 (5th Cir. 2006).

This Court's independent analysis of the record before it reveals ample support for the state court's factual findings, and the Court agrees with the above-quoted findings and analysis given by the Houston appellate court in rejecting petitioner's claim of vindictive sentencing.  Petitioner fails to show that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. §§ 2254(d)(1), (2).  Habeas relief is unwarranted.

*Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient

performance. *Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*  To establish the required prejudice in context

28

of sentencing, a petitioner must prove that his sentence would have been significantly less harsh but for counsel's deficient performance.  *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993); *see also U.S. v. Grammas*, 376 F.3d 433 (5th Cir. 2004).

Petitioner argues that he waived his right to a jury at punishment because trial counsel erroneously informed him that the trial judge could not exceed the forty-year sentence imposed in his 1989 trial.  As prejudice and harm, petitioner cites the fact that he received an eighty-year sentence in the instant trial.

In his affidavit submitted to the trial court on collateral review, trial counsel testified as follows:

> Mr. Garcia makes the claim that he was denied effective assistance of counsel based on his claim that I advised him that he was 'capped' at a maximum of forty (40) years.  Such is incorrect.  I never told Mr. Garcia that his punishment was 'capped' at forty (40) years. Indeed, I discussed the law as set forth in North Carolina v. Pearce, 395 U.S. 711 (1969) extensively with Mr. Garcia. Over-simplified, those discussions centered on the fact that the Sentencing Judge was likely prohibited from assessing additional confinement than was originally assessed at the prior trial UNLESS the Court was aware of 'additional factors not previously known at the time of the original sentencing which would have warranted additional punishment.'  It was further explained that should a jury assess punishment, such limitation (the exception thereto notwithstanding) did not apply.

> The primary 'additional conduct' in this case the State was attempting to rely upon was that Mr. Garcia had possessed contraband while serving out the original sentence.  The 'contraband' was cough medicine.  In my opinion, such was not the type of evidence which properly justified an increase in the sentence, but I informed Garcia that such was open to interpretation.  Indeed, I filed a 'Motion to Determine Sentencing Range' to have that specific issue decided – whether Judge Densen (who was hearing the case) believed that the full range of punishment was open (due to the 'cough medicine factor') or the

sentence was capped at forty (40) years.  Judge Densen refused to rule on the
Motion (effectively denying it).  The upshot was therefor (sic) clear – if we
elected to have the jury assess punishment the full range of punishment was
unquestionably open.  If the election were to the Court, we at least had a strong
argument of a forty (40) year cap.  All of this was discussed in detail with Mr.
Garcia.  He was absolutely full[y] informed of the ramifications of North
Carolina v. Pearce and its progeny as well as the realities raised by the new
evidence.

That Judge Densen assessed a more severe sentence than I believe was proper
(in fact, I think the 'cough medicine violation' was distorted beyond judicial
objectivity) does not mean Mr. Garcia was ill informed or improperly advised.
It was an uncertainty that had to be dealt with and Mr. Garcia was advised of
the risks, consequences and potential outcomes raised by the 'new' punishment
issues.  The matters were discussed in detail with Mr. Garcia.  He was fully
informed of the risks of either election.

*Ex parte Garcia*, p. 166-67.

In rejecting petitioner's claim for ineffective assistance of counsel, the trial court

found that the facts asserted in counsel's affidavit were true, that counsel did not advise

petitioner that his punishment would be limited to forty years, and that the totality of

counsel's representation was constitutionally sufficient.  *Ex parte Garcia*, pp. 174-75.

Because petitioner and trial counsel disputed whether counsel told petitioner that punishment

would be capped at forty years, the trial court's resolution of the claim essentially rested upon

credibility.  Weighing the credibility of the affiants is the role of the state habeas court.  *See*

*Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005).  Here, the state court found as true the

facts asserted in counsel's affidavit, impliedly rejecting petitioner's factual allegations to the

contrary.  The state court's credibility determinations are entitled to a strong presumption of correctness and are virtually unreviewable by the federal courts on habeas review.  *Id*.

Petitioner does not rebut the presumed correctness of the trial court's findings with clear and convincing evidence.  Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  The request for habeas relief is without merit.

*Conclusion*

Respondent's motion for dismissal and/or summary judgment (Docket Entry No. 14) is GRANTED.  The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED as moot.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas, on September 10, 2009.

_____
Gray H. Miller
United States District Judge

31